## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

BOBBY R. WEDGWORTH,

      Plaintiff,

v.

                                         Case No. 2:22-cv-02723-MSN-cgc
                                         JURY DEMAND

SHELBY COUNTY GOVERNMENT,

      Defendant.

---

### ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

---

Before the Court are cross-motions for summary judgment filed by Plaintiff Bobby R. Wedgworth (ECF Nos. 33 & 36, "Plaintiff's Motion") and Defendant Shelby County Government (ECF No. 37, "Defendant's Motion"). Plaintiff moves for partial summary judgment, while Defendant seeks summary judgment as to all claims. The parties have filed responses (ECF Nos. 38, 39, & 40) and replies (ECF Nos. 41 & 42) in support of and in opposition to the respective motions.[1] For the reasons stated below, Plaintiff's Motion for Partial Summary Judgment is

---

[1] Defendant argues that Plaintiff's unsworn declarations (ECF Nos. 33-1 and 33-3) are deficient under "Rule 58" (ECF No. 38 at PageID 321–25), but the Court construes this argument as referring to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(c)(4) requires that "an affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent on the matters stated." Unsworn declarations may substitute for affidavits if they are made "under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746; *Williams v. Kellogg USA, LLC*, No. 2:21-cv-2306-SHL-tmp, 2022 U.S. Dist. LEXIS 190779, at *7–9 (W.D. Tenn. Oct. 19, 2022). Here, Plaintiff's declarations do not include the required "under penalty of perjury" language. As a result, they are deficient and may not be considered for the purposes of summary judgment. *Kellogg*, 2022 U.S. Dist. LEXIS 190779 at *7–*9. *See Sfakianos v. Shelby Cnty. Gov't*, 481 F.

**DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED** as to all federal claims.

Plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE**.

<u>**STANDARD OF REVIEW**</u>

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment—and the Court to grant summary judgment—"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record"—including depositions, documents, affidavits or declarations, stipulations, or other materials—or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine

---

App'x 244, 245 (6th Cir. 2012) (affirming exclusion of affidavit not signed under penalty of perjury). However, to the extent the facts from these declarations were incorporated into Plaintiff's Memorandum in Support of Motion for Summary Judgment and were undisputed by Defendant in its response, the Court has considered those undisputed facts in its analysis.

issue of material fact or simply "by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (cleaned up). Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010). A mere "scintilla" of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment, the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53.

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex.*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and

defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

## BACKGROUND[2]

Plaintiff started his employment with the Shelby County Sheriff's Office ("SCSO") on January 16, 2015. (ECF No. 40 at PageID 357.) Prior to his hire with the SCSO, Plaintiff successfully completed all psychological examinations for employment. (*Id.* at PageID 358.) Plaintiff was able to perform his job as a Deputy Sheriff for SCSO without accommodation. (*Id.* at PageID 357.)

The parties dispute whether Plaintiff was diagnosed with Post-Traumatic Stress Disorder ("PTSD") before or after he started working for the SCSO. Plaintiff's Complaint alleges that "[p]rior to his employment, Plaintiff suffered from, and was diagnosed with PTSD, due in part to his status as a former member of the military." (ECF No. 1 at PageID 2.) However, in a deposition, Plaintiff testified that he did not disclose a PTSD diagnosis when he completed his online employment application or inform his SCSO supervisor about it because he was not diagnosed with PTSD at that time. (ECF No. 37-4 at PageID 182; ECF No. 40 at PageID 358.) Instead, Plaintiff testified, he was diagnosed with PTSD by the Department of Veterans Affairs in Memphis in 2017, while he was employed with SCSO but after his hire date. (ECF No. 37-4 at PageID 176.)

---

[2] Unless otherwise stated, the facts discussed are undisputed and are drawn from Plaintiff's Statement of Undisputed Material Facts (ECF No. 36-1) filed in support of Plaintiff's Motion; Defendant's response thereto (ECF No. 38-1); Defendant's Statement of Material Facts in Support of Its Motion for Summary Judgment (ECF No. 37-2); and Plaintiff's response thereto (ECF No. 40.) The same fact is often alleged in multiple of the foregoing documents, but for efficiency, the Court may cite only one document without parallel citations to others.

Further, Plaintiff testified that when he received a diagnosis of PTSD, he did not inform his immediate supervisor about the diagnosis then either. (*Id.* at PageID 184.)

On August 5, 2019, while working for Defendant, Plaintiff was involved in an incident in which he was stabbed and had to discharge his weapon, resulting in the death of his assailant. (ECF No. 40 at PageID 357; ECF No. 37-4 at PageID 186.)  Plaintiff testified that, following this 2019 incident, he was off work for two months.  (ECF No. 37-4 at PageID 187.)  Plaintiff further testified that when he returned to work after two months, he was assigned to non-enforcement duty, meaning he could not enforce the law and was just "helping out."  (*Id.* at PageID 190.) Defendant classified Plaintiff as having "on-the-job injury" ("OJI") status from August 5, 2019, to October 24, 2019.  (ECF No. 40 at PageID 360.)  During this period, it was recommended that Plaintiff meet with Mr. Jackie Setliff, a retired SCSO officer, "in response to" the 2019 shooting incident.  (*Id.*)  Defendant enrolled Plaintiff in a three-day course for officers involved in shootings. (*Id.*)  Plaintiff testified that the course was about people who had been through traumatic incidents and involved talking about feelings and experiences, but there was "no psychologist" present. (ECF No. 37-4 at PageID 266–67.)    Janis Watkins, SCSO's Human Resources ("HR") Coordinator, testified that at the end of this period, Plaintiff's OJI status was ended for his physical injury (from the stabbing), meaning Defendant no longer paid for medical treatment related to the 2019 shooting incident.  (ECF No. 37-5 at PageID 300–01.)  In 2020, Plaintiff informed Defendant through Sergeant Jeff Kempt and Laura Brown, a social worker and mental health therapist, that he was having memory issues he believed to be from stress from the shooting incident.  (ECF No. 38-1 at PageID 330; ECF No. 37-4 at PageID 206.)

On September 29, 2021, by which time the Plaintiff had been reassigned to a school, he was involved in another incident while working for Defendant that involved breaking up a fight.

(ECF No. 40 at PageID 357.)   After this incident, as Plaintiff testified, Assistant Chief Newt

Schaeffer told him he was being "relieved of duty" at the school because of the "shooting/PTSD

incident." According to the Plaintiff, Chief Schaeffer believed Plaintiff was having issues related

to PTSD from the 2019 shooting.  (ECF No. 37-4 at PageID 197 & 210.)  When asked what led

his supervisors to believe he was experiencing PTSD-related issues, Plaintiff responded, "[w]ell,

flashbacks. Being surrounded by -- being surrounded in a violent altercation. Being surrounded by

the students." (*Id*. at PageID 197.)  Plaintiff was off duty for approximately five weeks following

this 2021 school fight incident.  (*Id.* at PageID 206.)

Defendant referred Plaintiff to Ms. Brown for mental health assistance in 2021.  (ECF No.

40 at PageID 360.)  Plaintiff testified that Ms. Brown was a Shelby County employee, described

as a social worker and mental health therapist.  (ECF No. 37-4 at PageID 206–08.)   Plaintiff

testified that he saw Ms. Brown only twice, with each meeting lasting approximately thirty

minutes, and that she told Plaintiff she could not help him because she was not a psychologist and

could not provide the type of help he needed.  (*Id*.)  Plaintiff also testified that he asked Ms. Brown

about "doing a psychologist, but . . . nothing happened." (*Id*. at PageID 217.)  Plaintiff testified

that rather than being allowed to complete treatment as Chief Schaeffer had directed, he was

ordered to duty in the civil courts.  (*Id.* at PageID 196 & 243.)  According to Plaintiff's testimony,

being assigned to court duties without wanting to go there was commonly considered punishment

by SCSO employees.  (*Id.* at PageID 222–23.)

Plaintiff testified that after he was relieved of duty at the courts, he learned about "Risk

Management" policy and met with Jacqueline Watkins, another Shelby County employee.  (*Id.* at

PageID 223–24.)  As Plaintiff testified, Jacqueline Watkins informed him that Shelby County had

violated policy because she was never notified of his traumatic incidents—and in fact, she had

written the policy requiring notification whenever a Shelby County employee experienced a traumatic incident so that she could provide psychological help. (*Id.*) Janis Watkins in HR testified that Jacqueline Watkins reopened Plaintiff's case and told HR that Plaintiff should be classified as OJI status. (ECF No. 37-5 at PageID 295–96.) As a result, Defendant was classified as OJI status from March 10, 2022, to June 3, 2022. (ECF No. 40 at PageID 360.)

During this time in OJI status, Plaintiff was approved to see his personal psychologist, Dr. Panter, by Corvel, Defendant's third-party vendor for assisting OJI-classified employees with necessary treatment. (ECF No. 37-4 at PageID 230–31.) Plaintiff testified that Corvel told him that it would pay for Dr. Panter's sessions but never did, requiring him to pay for the sessions himself. (*Id.*) Plaintiff had "two to three sessions" with Dr. Panter that he paid for personally. (*Id.* at PageID 231.) Janis Watkins testified that Plaintiff's OJI status was closed on June 3, 2022, for noncompliance. (ECF No. 37-5 at PageID 300–02.) Janis Watkins testified that she did not know what caused the noncompliance, as Corvel would have discussed that directly with Plaintiff. (*Id.* at PageID 301.) Plaintiff testified that he was told by Corvel that all they needed was confirmation that he was attending sessions. [3] (ECF No. 37-4 at PageID 231.)

Defendant admitted that its policy provides for the treatment of OJIs, illnesses, or diseases that arise out of and in the course of performing assigned duties. (ECF No. 38-1 at PageID 334.) However, Defendant later adopted the view that Plaintiff had a pre-existing injury and not an on-the-job injury, and on August 4, 2022, denied Plaintiff payments based on this position. (*Id.* at PageID 331 & 334.) Defendant subsequently sent Plaintiff a letter dated August 4, 2022, stating

---

[3] Plaintiff seems to be of the belief that the noncompliance determination was made because Corvel wanted notes related to the treatment. (ECF No. 37-4 at PageID 230.) It is unclear to the Court whether that suggestion is disputed or what Corvel's precise requirements for compliance actually were.

that his PTSD diagnosis was related to a pre-existing condition and not to the 2019 shooting incident.  (ECF No. 1-3 at PageID 14.)  Plaintiff testified that he contacted the Employee Assistance Program ("EAP") in February or March 2022, but they denied him assistance, stating they could not help with OJI issues.  (ECF No. 37-4 at PageID 216–17, 244.)  Plaintiff described EAP as being "rude" in their denial.  (*Id.* at PageID 244.)

The Complaint alleges that Plaintiff was officially discharged by Defendant on October 11, 2022, had not been paid a salary going back to June 2022.  (ECF No. 1 at PageID 2.)  Plaintiff testified that he was administratively separated from the Shelby County Government in October 2022 due to "exhaustion of leave," with no leave available.  (ECF No. 37-4 at PageID 248–49, 259–60.)  Further, Plaintiff testified that he was not disciplined in any way when he was separated, and no one told him he was prohibited from returning to employment with Shelby County.  (*Id.* at PageID 259–60.)

For the purposes of summary judgment, Defendant does not dispute that Plaintiff has a disability that is covered under the ADA.  (ECF No. 40 at PageID 359.)  However, when asked whether various supervisors were aware that he had PTSD, Plaintiff's testimony was inconsistent. Plaintiff testified that he had "no idea" whether Chief Schaeffer was aware that he had PTSD when he was relieved of duty in 2021.  (ECF No. 37-4 at PageID 211.)  Similarly, Plaintiff testified that he did not tell his sergeant about PTSD after the 2021 school fight incident, though the sergeant knew about his 2019 shooting incident.  (*Id.* at PageID 216.)  However, Plaintiff also testified that when meeting with Captain Oscar Harris, he was "pretty sure" he told him that Dr. Panter had diagnosed him with PTSD.  (*Id.* at PageID 223.)

Plaintiff's testimony regarding accommodation requests was indeterminate.  When asked whether he requested accommodation from various supervisors, Plaintiff testified:  "I don't

remember," "No," and "I don't think I asked him that" when asked about requesting accommodation from Chief Schaeffer (*id.* at PageID 252, 254); "I didn't get a chance to ask" when relieved of duty (*id.* at PageID 242); and "I have no idea" when asked what work environment would have been his choice of accommodation (*id.* at PageID 252.) Plaintiff also testified that he "didn't know anything about all that" when asked whether he recalled asking for reasonable accommodations in a meeting with HR. (*Id.* at PageID 270.)

## **DISCUSSION**

The Court is sensitive to the fact that the Plaintiff has a long history of public service, both as a veteran and a law enforcement officer. The Court is also sensitive to the undisputed fact that Plaintiff has suffered from a very difficult mental illness arising from that service. It takes seriously the potentially debilitating effects of that struggle upon the Plaintiff and others similarly situated. Mental health concerns are frequently the subject of this Court's consideration, and it approaches every such case with care and close attention.

The Court addresses the cross-motions for summary judgment by examining each of Plaintiff's claims in turn. The analysis begins with Plaintiff's ADA claims, including failure to accommodate, failure to engage in the interactive process, and retaliation theories. The Court then considers Plaintiff's civil rights claims under Title I and Title VII, followed by his constitutional claims for due process and equal protection violations under the Fourteenth Amendment. Next, the Court addresses Plaintiff's claim under 42 U.S.C. § 1983. Finally, having resolved all federal claims, the Court considers whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for breach of contract and negligence.

A.    **Americans with Disabilities Act Claims**

Both parties seek summary judgment on Plaintiff's claims under the ADA.  (ECF No. 36-2 at PageID 128–36; ECF No. 37-1 at PageID 142–150.)

The ADA prohibits discrimination "against a qualified individual on the basis of disability," 42 U.S.C. § 12112(a), and requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual" with a disability unless those accommodations would "impose an undue hardship on the operation of the business." 42 U.S.C. § 12112 (b)(5)(A).  Courts analyze failure to accommodate and failure to engage in the interactive process claims under the direct-evidence standard.  *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 614 (6th Cir. 2020).  Unlike a disability discrimination claim premised on wrongful termination "because of disability," the *McDonnell Douglas* burden-shifting framework does not apply to a failure to accommodate theory.  *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (collecting cases); ");"); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (explaining that "claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination" and "consequently are suitable for analysis under the direct-evidence framework").

To establish a *prima facie* case of an employer's failure to accommodate, the plaintiff must show that (1) he has a disability within the meaning of the ADA, (2) he is otherwise qualified for the position, with or without a reasonable accommodation, (3) the defendant knew or had reason to know of his disability, (4) he requested a reasonable accommodation, and (5) the defendant failed to provide the necessary accommodation.  *King v. Steward Trumbull Mem'l Hosp.*, 30 F.4th 551, 560 (6th Cir. 2022) (citing *Kirilenki-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d

652, 669 (6th Cir. 2020)); *see also Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 417 (6th Cir. 2021)

(citing *Fisher*, 951 F.3d at 417).

Defendant concedes for the purposes of summary judgment that Plaintiff has a disability

covered by the ADA.  (ECF No. 40 at PageID 359.)  It is undisputed that Plaintiff was able to

perform the essential functions of a Deputy Sheriff prior to his administrative leave.  (*Id.* at PageID

357 & 359.)  Therefore, the primary issues are whether Defendant had sufficient knowledge of

Plaintiff's alleged disability, whether Plaintiff in fact requested a reasonable accommodation, and

whether Defendant failed to provide such an accommodation as required by law.

*1.     Employer Knowledge*

Defendant contends that Plaintiff failed to inform his supervisors of a PTSD diagnosis.

(ECF No. 37-1 at PageID 145–146.)  Plaintiff responds that after both the 2019 shooting incident

and the 2021 school fight incident, he informed Defendant through Sgt. Kempt and Ms. Brown of

memory issues that he believed to stem from PTSD and that he requested treatment.  (ECF No.

38-1 at PageID 330–31.)  Plaintiff also testified that after the 2021 school fight incident, Chief

Schaeffer told him he was being relieved of duty due to the "shooting/PTSD incident."  (ECF No.

37-4 PageID 197 & 210.)  When asked what gave them an indication he was having issues with

PTSD, Plaintiff testified about experiencing flashbacks and being surrounded during violent

altercations.  (*Id.* at PageID 197.)

Defendant classified Plaintiff as having an on-the-job injury.  (ECF No. 38-1 at PageID

331.)  Defendant referred Plaintiff to Ms. Brown for mental health assistance in 2021.  (ECF No.

40 at PageID 360.)  However, Plaintiff's testimony regarding whether various supervisors were

aware that he had PTSD was inconsistent.  Plaintiff testified that he had "no idea" whether Chief

Schaeffer was aware that he had PTSD when he was relieved of duty in 2021.  (ECF No. 37-4 at

PageID 211.)  Similarly, Plaintiff testified that he did not tell his sergeant about PTSD after the

2021 school fight incident, though the sergeant knew about his 2019 shooting incident.  (*Id.* at

PageID 216.)  However, Plaintiff also testified that when meeting with Captain Oscar Harris, he

told him that Dr. Panter had diagnosed him with PTSD.  (*Id.* at PageID 223.)

Viewing the record in the light most favorable to Plaintiff, a reasonable jury could find,

based on the record, that Defendant was aware of Plaintiff's mental health issues and need for

treatment, if not the precise diagnosis of PTSD.

      2.      *Request for Accommodation and Interactive Process*

Defendant argues Plaintiff did not request a reasonable accommodation.  (ECF No. 37-1 at

PageID 146–148.)  Plaintiff asserts that he made repeated requests for more mental health

treatment after the traumatic incidents, and that these constituted accommodation requests.  (ECF

No. 41 at PageID 365–66; ECF No. 38-1 at PageID 329–30.)  Plaintiff argues in his briefing that

"the reasonable accommodation in this case was in fact *the treatment* that Defendant failed to

provide," and that "Defendant was aware of his need for it."  (ECF No. 41 at PageID 365 (emphasis

added).)

The ADA defines "reasonable accommodation" to include:

> [J]ob restructuring, part-time or modified work schedules, reassignment to a vacant
> position, acquisition or modification of equipment or devices, appropriate
> adjustment or modifications of examinations, training materials or policies, the
> provision of qualified readers or interpreters, and other similar accommodations for
> individuals with disabilities.

42 U.S.C. § 12111(9).  The accompanying regulations further define reasonable accommodations

as "[m]odifications or adjustments to the work environment . . . that enable an individual with a

disability who is qualified to perform the essential functions of that position." 29 C.F.R. §

1630.2(o)(1)(ii).  The Sixth Circuit has given an example of accommodations as working fewer

than forty hours per week so that an employee could go to a "doctor's appointments, dialysis, therapy, or anything else that requires time away from work," and noted that "the ADA requires that employers reasonably accommodate employees with disabilities, including allowing modified work schedules." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018).

With that framework in mind, the threshold question is whether Plaintiff actually requested accommodation as defined by the ADA. When a disabled employee requires accommodation, the employee bears the burden to propose a reasonable accommodation. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202–03 (6th Cir. 2010) ("An employee has the burden of proposing an initial accommodation . . . ."); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046–47 (6th Cir. 1998) ("The [] interpretive guidelines indicate that generally 'it is the responsibility of the individual with a disability to inform the employer than an accommodation is needed.'"); *Kleiber*, 485 F.3d at 870 (citation omitted) ("Generally, an ADA plaintiff bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable.").

While the Sixth Circuit has held that an employee need not use the magic words "accommodation" or even "disability," a request for accommodation "does need to make it clear from the context that it is being made to conform with existing medical restrictions." *Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007). Additionally, when a disability is mental, rather than physical, the disability, resulting limitations, and necessary reasonable accommodations often are not "open, obvious, and apparent." *G.E. v. Williamson Cnty. Bd. of Educ.*, 731 F. Supp. 3d 954, 994–95 (M.D. Tenn. 2024) (quoting *J.W. ex rel. Washington v. Paley*, 81 F.4th 440, 450 (5th Cir. 2023)). Critically, where an employee fails to identify and request reasonable accommodations, the claim "must be dismissed." *Johnson v. Cleveland City Sch. Dist.*, 443 F.

13

App'x 974, 983 (6th Cir. 2011) (citing *Tubbs v. Formica Corp.*, 107 F. App'x 485, 488–89 (6th Cir. 2004)).

The regulations acknowledge that determining the appropriate accommodation may require the employer "to initiate an informal, interactive process." *Tomlinson v. Krauss-Maffei Corp.*, No. 21-6245, 2023 U.S. App. LEXIS 2949, at *17 (6th Cir. Feb. 6, 2023) (quoting 29 C.F.R. § 1630.2). "This process functions to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Id.* (quoting 29 C.F.R. § 1630.2). Additionally, "[e]ven though the interactive process is not described in the statute's text, [it] is mandatory, and both parties have a duty to participate in good faith." *Id.* (quoting *Kleiber*, 485 F.3d at 871). "An employer is required 'to initiate an informal interactive process' when necessary to determine how an employee's disability limits his ability to work and to identify appropriate reasonable accommodations." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017) (quoting 29 C.F.R. § 1630.2(o)(3)). The ADA's guidelines advise the employer to "[c]onsult with the individual with a disability to ascertain the precise job-related limitations imposed by [his] disability." *Arndt v. Ford Motor Co.*, 247 F. Supp. 3d 832, 859 (E.D. Mich. 2017) (quoting 29 C.F.R. § 1630.9, App.).

However, the ADA does not oblige "employers to make on-the-spot accommodations of the employee's choosing." *Brumley v. UPS*, 909 F.3d 834, 840 (6th Cir. 2018). "[C]ausing unnecessary delays, obstructing the process, or *failing to adequately communicate*" or provide information during the process may evidence a party's bad faith. *Id.* (emphasis added) Where a party fails to participate in good faith, "courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Kleiber*, 485 F.3d at 871 (citation omitted). In the Sixth Circuit, "failure to engage in the interactive process does not give rise to an independent claim. Instead, it

is a violation of the ADA only if the plaintiff establishes a *prima facie* case of failure to accommodate." *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 525 (6th Cir. 2021) (citations omitted).

In light of these principles, the record reflects that Plaintiff clearly communicated only that he was mentally unwell. He informed Defendant through Sgt. Kempt and Ms. Brown that he was having memory issues believed to be from stress from the 2019 shooting incident. (ECF No. 38-1 at PageID 330.) Plaintiff testified that he told Captain Harris he did not understand why he was downtown and explained why he was having issues, stating he did not get any help or therapy through the county. (ECF No. 37-4 at PageID 251–2.)

Further, Plaintiff's testimony regarding accommodation requests could end the inquiry on its own. When asked whether he requested accommodations from various supervisors, Plaintiff never testified in the affirmative. Instead, he said: "I don't remember" when asked about requesting accommodations from Chief Schaeffer (*Id*. at PageID 252 & 254); "I didn't get a chance to ask" when relieved of duty (*Id*. at PageID 242); and "I have no idea" when asked what work environment would have been his choice of accommodation (*Id*. at PageID 252.) Plaintiff also testified that he "didn't know anything about all that" when asked whether he recalled asking for reasonable accommodations in a meeting with human resources. (*Id.* at PageID 270.) Plaintiff can point to no positive act of communication on his part approximating an actual, clear request for reasonable accommodation.

All of this communication (or the lack thereof), even viewed in the light most favorable to Plaintiff, does not establish a request for workplace accommodation within the meaning of the ADA. Plaintiff has not identified evidence that he requested *any* specific workplace modifications—such as an altered work schedule, job restructuring, reassignment to different

duties—or other accommodations that would have enabled him to perform his job functions despite his disability.  Instead, Plaintiff argues that "the reasonable accommodation in this case was in fact the treatment that Defendant failed to provide," but for which the Plaintiff never clearly asked.  (ECF No. 41 at PageID 365–66.)  Despite the lack of evidence for any request, Plaintiff asserts that "Defendant was aware of his need for it."  (ECF No. 41 at PageID 365–66.)  But even this much is not clear, as Plaintiff's testimony also indicated that even *he* did not know what workplace accommodations would have been preferable.  *See* ECF No. 37-4 at PageID 252 (responding "I have no idea" when asked what would have been Plaintiff's "choice of accommodation"). Based on this record, Plaintiff has not carried his burden to establish that he requested reasonable accommodation within the meaning of the ADA.[4]  The Court therefore does not reach the question of whether Defendant failed to provide necessary accommodations, as there must first be a request made by the Plaintiff. There is none here, and Plaintiff's *prima facie* case of failure to accommodate therefore fails.

> 3.    <u>Retaliation</u>

The Complaint makes no mention of retaliation, fails to identify what the protected activity was, and does not allege facts sufficient to support a retaliation claim under the ADA. Nevertheless, Plaintiff attempts to raise this theory for the first time in his Memorandum in Support of Motion for Partial Summary Judgment.  (ECF No. 36-2 at PageID 133–34.)  And Defendant did not specifically respond to Plaintiff's retaliation argument in the briefing.  However, even if

---

[4]  The Court also notes that Plaintiff's assertions address not so much workplace accommodations as much as ongoing treatment that Plaintiff believes he needed.  The distinction may seem semantic, but it is relevant for ADA purposes.  As presented, Plaintiff's assertion comes across as demanding not workplace accommodation, but rather a supplemental health benefit.

Plaintiff's Complaint had alleged retaliation, his claim fails to make a *prima facie* case or meet the required burden-shifting analysis.

The ADA prohibits retaliation against an individual because he opposed unlawful practices or otherwise engaged in protected activity under the statute. 42 U.S.C. § 12203(a). However, the Sixth Circuit has explained that the ADA is not "a catchall statute creating a cause of action for any workplace retaliation, but protects individuals from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). To establish a *prima facie* case of retaliation, Plaintiff must show: (1) he engaged in protected activity; (2) Defendant was aware of the activity; (3) he suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse action. *Id*. "Protected activity typically refers to action taken to protect or oppose a statutorily prohibited discrimination." *Id*. (quoting *Goonan v. Fed. Rsrv. Bank of New York*, 916 F. Supp. 2d 470, 484–85 (S.D.N.Y. 2013)). Requests for accommodation are "protected acts" under the ADA. *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015) (citing *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013)). Thus, an employer cannot retaliate against an employee for requesting an accommodation. *Id*.

Retaliation claims under the ADA, in the absence of direct evidence, are evaluated using the *McDonnell Douglas* burden-shifting framework. *Rorrer*, 743 F.3d at 1046. If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its action. *A.C. ex rel. J.C.*, 711 F.3d at 697. If offered, the burden then returns to the plaintiff to prove that the defendant's reasons were a pretext for unlawful retaliation. *Id*. The plaintiff can demonstrate pretext by showing that the employer's stated reasons (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) were insufficient

to motivate the employer's action.  *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 883 (6th Cir. 1996) (citing *Manzer v. Diamond Shamrock Chems Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)).

Even if Plaintiff had properly pleaded a retaliation claim, it would fail.  As discussed above, Plaintiff's testimony regarding requests was inconsistent and demonstrated that he did not make clear requests for workplace accommodation within the meaning of the ADA.  Because the Court has found that there was no request for accommodation, there is no protected activity upon which to base a retaliation claim.  Moreover, even if Plaintiff could establish a *prima facie* case, Defendant has offered a legitimate, nondiscriminatory reason for its actions—exhaustion of leave. Plaintiff has provided no evidence that this reason was pretextual under any of the *Kocsis* factors or that his separation was motivated by retaliation for any protected activity.  Indeed, Plaintiff himself testified that he was "administratively separated because he "used up [his] sick leave" and that he was not disciplined in any way when separated.  (ECF No. 37-4 at PageID 248–49 & 259–60.)

Thus, Plaintiff's retaliation claims are not adequately pleaded and fail both the *prima facie* case stage and the burden-shifting analysis.

Accordingly, summary judgment is **GRANTED** in favor of Defendant and **DENIED** as to Plaintiff on the ADA claims.

## B.  <u>Civil Rights Claims</u>

Both parties move for summary judgment on Plaintiff's claims under Title I and Title VII of the Civil Rights Act.  (ECF No. 36-2 at PageID 125; ECF No. 37-1 at PageID 150–51.)

As Defendant points out, the Complaint does not specify the legal authority for these claims, nor does it set forth allegations specific to a cause of action under those statutes.  (ECF No. 37-1 at PageID 140 & 150–51.)  Indeed, it is unclear from the face of the Complaint whether

Plaintiff intended to assert claims under those statutes, as the Complaint merely refers to "Civil Rights Violation of Title I and Title VII" without providing further statutory citation or relevant facts. (ECF No. 1 at PageID 1–2.)

In both his Response to Defendant's Motion for Summary Judgment and his Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, Plaintiff concedes that he "has not submitted any support for [the Civil Rights Act claim.]" (ECF No. 39 at PageID 343; ECF No. 41 at PageID 361.) The record contains no evidence or legal authority supporting claims under these statutes.

Accordingly, summary judgment is **GRANTED** in favor of Defendant and **DENIED** as to Plaintiff on the Title I and Title VII claims.

## C.    Due Process Claim

Defendant moves for summary judgment as to Plaintiff's due process claim under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment prohibits States and local governments from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Federal courts have long recognized that state civil servants may have a property interest in continued employment under certain circumstances and must be afforded due process before being discharged. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Relford v. Lexington-Fayette Urban Cnty. Gov't*, 390 F.3d 452, 460 (6th Cir. 2004) (recognizing that "[u]nder state law, government and civil service employees may have a property right in their continued employment").

Both procedural and substantive due process claims require a showing that a constitutionally protected property or liberty interest has been infringed. *Hahn v. Star Bank*, 190

19

F.3d 708, 716 (6th Cir. 1999).  To establish a procedural due process claim, a plaintiff must show

that they (1) have a constitutionally protected property interest that they were (2) deprived of by

the state (3) without adequate procedural rights.  *Id.* at 716.  To establish a substantive due process

claim, Plaintiff must show that they have (1) a constitutionally protected property interest that has

been (2) deprived through arbitrary and capricious action.  *Braun v. Ann Arbor Charter Township*,

519 F.3d 564, 573 (6th Cir. 2008).  Plaintiff cannot establish either claim.

Plaintiff's Response to Defendant's Motion for Summary Judgment asserts he could only

be terminated "for just cause" under the Shelby County Civil Service Merit System (ECF No. 39

at PageID 344), but Defendant contends—and Plaintiff's own testimony does not dispute—that

Plaintiff was administratively separated for exhaustion of leave, not disciplinary reasons.  (ECF

No. 42 at PageID 371–73.)    Indeed, Plaintiff testified that he was "administratively separated"

because he "used up [his] sick leave."  (ECF No. 37-4 at PageID 248–49 & 259–60.)    Beyond the

bare inclusion of "due process" in the Complaint, Plaintiff alleges no specific facts showing denial

of due process or arbitrary state action.  As Plaintiff has not shown (or even seriously argued) a

protected property interest or denial of adequate process, Defendant is entitled to summary

judgment on this claim.[5]

---

[5] In fact, the section of Plaintiff's Response to Defendant's Motion for Summary Judgment
(ECF No. 39) subtitled "Due Process" spends its first three paragraphs inexplicably discussing
Tennessee contract law. (*Id.* at PageID 343–44.)  Further, when Plaintiff does get around to
addressing due process, he cites Defendant's Response in Opposition to Plaintiff's Motion for
Partial Summary Judgment (ECF No. 38) for the proposition that Plaintiff could not be fired but
for "just cause."  (ECF No. 39 at PageID 344.)  But this is, unsurprisingly, not what Defendant
says; rather, Defendant makes a distinction between a disciplinary firing, which may only be made
for just cause, and an administrative separation, which occurs for exhaustion of leave.  (ECF No.
38 at PageID 311–12.)  It is wholly undisputed that Plaintiff's employment ended as the result of
an administrative separation.

Accordingly, summary judgment is **GRANTED** in favor of Defendant on the due process claim.

D.    <u>**Equal Protection Claim**</u>

Defendant moves for summary judgment on Plaintiff's equal protection claim.   (ECF No. 37-1 at PageID 153.)  Defendant argues that Plaintiff has failed to identify any similarly situated comparators or present facts showing he was treated differently from others in like circumstances. (*Id*.)

The Equal Protection Clause of the Fourteenth Amendment mandates that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  In the employment context, to establish a claim under the Equal Protection Clause, a plaintiff must demonstrate that they were treated differently than similarly situated individuals and that the differential treatment lacked a rational basis.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Further, where an employee alleges disparate treatment based on individual circumstances, courts require a showing that the employee was similarly situated in all relevant respects to others who were treated differently.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352–53 (6th Cir. 1998).  To meet this threshold requirement, a plaintiff must demonstrate that he and other individuals received different treatment were similarly situated in all material respects.  *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005).

Plaintiff's Complaint references equal protection and his Response to Defendant's Motion for Summary Judgment asserts that he was not provided with equal protection (ECF No. 1; ECF No. 39 at PageID 344), but Plaintiff has not presented any evidence or arguments identifying similarly situated comparators who were treated differently, or any facts supporting disparate

treatment on a protected basis.  (ECF No. 37-1 at PageID 153.)  Without such evidence, Plaintiff

cannot establish a violation under the Equal Protection Clause.

Accordingly, summary judgment is **GRANTED** in favor of Defendant on the equal

protection claim.

E.      <u>Section 1983 Claims</u>

Defendant moves for summary judgment on Plaintiff's claim under 42 U.S.C. § 1983.

(ECF No. 37-1 at PageID 153–54.)  Defendant argues that Plaintiff has failed to identify any

constitutional or statutory right that was violated and that the record is devoid of facts supporting

an independent § 1983 claim.  (*Id*.)

Section 42 U.S.C. § 1983 provides a private cause of action to obtain damages for violation

of the Constitution or a federal statute.  The section provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper proceeding for
> redress.

42 U.S.C. § 1983.

Plaintiff does not present legal arguments in his summary judgment motion or reply.  The

record contains no facts supporting a § 1983 claim based on the violation of a constitutional right

apart from those claims already analyzed.  To the extent Plaintiff seeks to pursue a § 1983 claim

based on an alleged violation of the ADA, this claim also fails.  Having determined that Plaintiff's

ADA claim fails as a matter of law because he did not request accommodations within the meaning

of the statute, there is no underlying ADA violation to support a § 1983 claim.[6]

---

[6] The Sixth Circuit has not squarely decided whether the ADA precludes a Section 1983
remedy.  However, other circuits have held that the ADA precludes Section 1983 claims for

Accordingly, summary judgment is **GRANTED** in favor of Defendant on the § 1983 claims.

**F.**    <u>**State Law Claims**</u>

Plaintiff also asserts claims for breach of contract and negligence under state law.  (ECF No. 1 at PageID 4.)

"When a federal court dismisses all pending federal claims before trial, it is usually best to allow the state courts to decide state issues."  *Kowall v. Benson,* 18 F.4th 542, 549 (6th Cir. 2021); *Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011) (quoting *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996)) ("When . . . all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.").  "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

The Court has determined that Defendant is entitled to judgment as a matter of law on Plaintiff's federal claims.  Without an independent basis for federal jurisdiction, the Court follows the usual Sixth Circuit practice and declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.  *Crehan v. Davis*, 713 F. Supp. 2d 688, 701 (W.D. Mich. 2010) (citing *Moon*, 465 F.3d at 728 (6th Cir. 2006)).

Thus, Plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE.**

---

violations of the statute.  *Post v. Trinity Health-Michigan*, 44 F.4th 572, 581 (6th Cir. 2022) ("[M]any circuit courts have already held that plaintiffs cannot use § 1983 to enforce the ADA. Yet we merely flag the issue for future cases." (cleaned up)); *Bullington v. Bedford Cnty.*, 905 F.3d 467, 471 (6th Cir. 2018) (citing *Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 300 (3d Cir. 2017).

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment (ECF Nos. 33 & 36) is **DENIED**.  Defendant's Motion for Summary Judgment (ECF No. 37) is **GRANTED** in favor of the Defendant on all federal claims.  Plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE**.[7]

**IT IS SO ORDERED**, this 26th day of September 2025.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

---

[7] The other pending motions from both parties, ECF Nos. 47, 48, and 49 are hereby **DENIED AS MOOT**.

24